UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

DERRICK GREGORY JAMES,

        Plaintiff,

v.                                        Case No. 3:21-cv-183-BJD-JRK

E. PEREZ-LUGO, et al.

        Defendants.

_____

## ORDER

### I. Status

Plaintiff, Derrick Gregory James, an inmate of the Florida penal system, is proceeding pro se on an amended complaint for the violation of civil rights under 42 U.S.C. § 1983 against three Defendants (Doc. 9; Am. Compl.).[1] Plaintiff's claims arise from his requests for medical treatment while housed at Columbia Correctional Institution (CCI) Annex ("the Annex"). Am. Compl. at 5-7. Before the Court are the following substantive motions: Defendants Schouest and Bowden's motion to dismiss (Doc. 16; Schouest Motion), which

---

[1] Plaintiff names six Defendants in his amended complaint, see Am. Compl. at 2-4, but he voluntarily dismissed his claims against three because he was unable to serve them, see Doc. 29. See also Order (Doc. 36) (dismissing without prejudice the claims against Defendants Nurse Robinson, M. Tomlinson, and M. Herring). Plaintiff names "Nurse Roberson" as a Defendant, see Am. Compl. at 1, 2, but, on the docket, the Clerk spelled this Defendant's last name as "Robinson."

Plaintiff opposes (Doc. 19; Pl. Schouest Resp.) with exhibits (Docs. 19-1 through 19-10; Pl. Exs. A-J); Defendant Dr. Perez-Lugo's motion to dismiss (Doc. 39; Dr. Motion), which Plaintiff opposes (Doc. 40; Pl. Dr. Resp.);[2] and Plaintiff's request for the Court to take judicial notice of the record (Doc. 41; Pl. Motion).

Before addressing the motions to dismiss, the Court quickly dispenses with Plaintiff's request that the Court take judicial notice. Plaintiff says he did not have a copy of his amended complaint with him when he was preparing his response to Dr. Perez-Lugo's motion to dismiss. Pl. Motion at 1. He now wishes to draw the Court's attention to facts he alleged in his amended complaint, which, he contends, Dr. Perez-Lugo omitted or overlooked in his motion to dismiss. Id.

Plaintiff does not have to ask the Court to take judicial notice of the facts he alleges in his amended complaint because, in ruling on a motion to dismiss, a district court must accept as true the facts a plaintiff alleges in his complaint. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). As such, Plaintiff's request is due to be denied as moot. Additionally, Plaintiff's request that the Court grant summary judgment in his favor, see Pl. Motion at 2, is not properly before the Court. A party may not request affirmative relief in a response to a motion.

---

[2] In opposing Dr. Perez-Lugo's motion to dismiss, Plaintiff relies on the exhibits he filed with his response to Defendants Schouest and Bowden's motion to dismiss. See Pl. Dr. Resp. at 1.

See Fed. R. Civ. P. 7(b)(1) ("A request for a court order must be made by motion."). See also M.D. Fla. R. 3.01(a) (requiring submission of a motion requesting relief).

## II. Motion to Dismiss Standard

Under the Federal Rules of Civil Procedure, a defendant may move to dismiss a complaint for a plaintiff's "failure to state a claim upon which relief may be granted." Fed. R. Civ. P. 12(b)(6). In ruling on such a motion, the court must accept the plaintiff's allegations as true, liberally construing those by a plaintiff proceeding pro se, but need not accept as true legal conclusions. Iqbal, 556 U.S. at 678. Though detailed factual allegations are not required, Rule 8(a) demands "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Id. A plaintiff should allege enough facts "to raise a reasonable expectation that discovery will reveal evidence" supporting the plaintiff's claims. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007).

## III. Complaint Allegations

Plaintiff alleges he sought medical care through sick-call requests and grievances for over a year before he received adequate, proper treatment. Am. Compl. at 7-9. Plaintiff explains he had been experiencing "numbness at the bottom of his right foot [and] extreme pain within the right ankle and Achilles-heel." Id. at 7. He filed a formal grievance on April 20, 2020, complaining that

he "was not receiving appropriate care" and that he needed an MRI. Id. On April 27, 2020, Dr. Perez-Lugo, the Medical Director, denied his grievance because Plaintiff was improperly attempting to access medical treatment "through the grievance system." Id. Dr. Perez-Lugo noted in the grievance response that Plaintiff had "an upcoming appointment scheduled with the provider for [his] issue." Pl. Ex. C at 12.

Plaintiff submitted another grievance on June 8, 2020, again requesting medical care, including an MRI. Am. Compl. at 7. Plaintiff alleges M. Tomlinson (a nurse) denied his grievance, informing him "diagnostic tests and MRI's are not ordered through the grievance system." Id. In the response, Nurse Tomlinson noted Plaintiff was seen on April 27, 2020, at which time "x-ray results were reviewed," but the provider decided to "hold" on ordering an MRI. Pl. Ex. A at 4. Nurse Tomlinson further noted Plaintiff had not accessed sick call since his April 27, 2020 appointment. Id. Nurse Tomlinson instructed Plaintiff to access sick call if he had additional "questions or concerns about [his] current treatment plan." Id.

Plaintiff thereafter filed a formal grievance, which Dr. Perez-Lugo denied because the provider who evaluated him on April 27, 2020, determined an MRI was not clinically indicated. Am. Compl. at 7-8; Pl. Ex. A at 6. Dr. Perez-Lugo reminded Plaintiff that "diagnostic tests are not issued through the

grievance system." Am. Compl. at 7-8; Pl. Ex. A at 6. Plaintiff appealed the institution responses to the Office of the Secretary of the Florida Department of Corrections (FDOC), which Defendants Schouest and Bowden denied. Am. Compl. at 8; Pl. Ex. A at 7-8.

Plaintiff alleges he submitted "another inmate sick-call request" on November 18, 2020,[3] because he noticed "extensive right calf muscle shrinkage." Am. Compl. at 8. A review of the sick-call request shows Plaintiff reported his calf had "continuously been shrinking for several months." Pl. Ex. D at 2. He also complained that he had pain in his right ankle and heel and his foot was numb. Id. Plaintiff alleges he filed a grievance on November 30, 2020, because the sick-call request did not generate an appointment. Am. Compl. at 8. Nurse K. Roberson denied his grievance, noting, "record review indicates [Plaintiff was] assessed by medical on [November 18, 2020]." Pl. Ex. D at 3.

Plaintiff alleges Nurse Roberson lied in the grievance response. Am. Compl. at 8. He denies having "been seen" in sick call on November 18, 2020, "concerning . . . [the] injury/issue of right calf shrinkage," and asserts he was seen by a nurse "concerning his ears only." Id. (internal quotation marks

---

[3] In his amended complaint, Plaintiff does not reference having submitted sick-call requests before this one in November 2020. However, with his response to Defendants Schouest and Bowden's motion to dismiss, Plaintiff offers a sick-call request dated April 21, 2020, in which he complained that he needed to see a doctor about his right foot pain and numbness. Pl. Ex. J at 8.

omitted). However, Plaintiff acknowledges he was treated by Nurse Roberson "on two or three other occasions," and the nurse told him he/she "was not going to recommend an MRI" but would put in a request for Plaintiff to see the doctor. Id.

Plaintiff alleges that, on December 8, 2020, he submitted a formal grievance complaining that the medical department "wrongly alleged that [he] was seen" on November 18, 2020. Am. Compl. at 8; see also Pl. Ex. D at 4. Dr. Perez-Lugo denied his grievance. Am. Compl. at 9; Pl. Ex. D at 5. Dr. Perez-Lugo noted in the grievance response that "records indicate [Plaintiff was] last seen in sick call on November 18, 2020, and since that time [he had] not accessed medical for any complaints." Pl. Ex. D at 5. Plaintiff alleges he then appealed to the Office of the Secretary, complaining that the medical department "outright lied about having seen Plaintiff by way of sick-call concerning Plaintiff's right calf leg muscle shrinkage issue." Am. Compl. at 9. Defendants Schouest and Bowden denied his appeal. Id. See also Pl. Ex. B at 2.

On January 19, 2021, Plaintiff was treated by Dr. Perez-Lugo, who noted that Plaintiff's right calf muscle indeed was much smaller than the left. Am. Compl. at 9. Dr. Perez-Lugo referred Plaintiff to a neurologist. Id. See also Pl. Ex. F at 2. Plaintiff alleges that, on February 11, 2021, "[he] was transported

to [the Reception and Medical Center (RMC)] to see a neurologist." Am. Compl. at 10; Pl. Ex. E at 7. Plaintiff contends the neurologist told him he would need an MRI and surgery. Am. Compl. at 10. According to documentation Plaintiff provides, between February and May 2021, Plaintiff submitted at least three grievances and four sick-call requests to follow up on the treatment the neurologist allegedly recommended. Pl. Ex. F at 4, 5; Pl. Ex. J at 5; 9-12. However, only two grievances (dated February 22, 2021, and February 26, 2021) were submitted to officials at the Annex because Plaintiff was transferred to South Bay Correctional Institution on March 17, 2021. Pl. Ex. J at 13. Plaintiff acknowledged in one of his sick-call requests he submitted to officials at South Bay that he had an MRI on May 7, 2021. Pl. Ex. J at 11.

Without specifically connecting factual allegations to his asserted legal claims or the individual Defendants, Plaintiff alleges Defendants' conduct violated the First Amendment, the Fourteenth Amendment (due process), and the Eighth Amendment. Am. Compl. at 3, 5. He seeks monetary relief and an injunction against Centurion (apparently through his official-capacity claim against Dr. Perez-Lugo) related to medical co-payments and the process for submitting sick-call requests. Id. at 6.

# IV. Analysis

## A. Consideration of Extrinsic Evidence

In support of his responses to Defendants' motions to dismiss, Plaintiff provides exhibits, most of which are grievance records. Generally, a court should not consider extrinsic evidence when ruling on a motion to dismiss unless a document "is central to the plaintiff's claim" and incorporated by reference in the complaint. Brooks v. Blue Cross & Blue Shield of Fla., Inc., 116 F.3d 1364, 1368-69 (11th Cir. 1997) ("[T]he analysis of a 12(b)(6) motion is limited primarily to the face of the complaint and attachments thereto."). In fact, Rule 12 provides, "If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). See also Trustmark Ins. Co. v. ESLU, Inc., 299 F.3d 1265, 1267 (11th Cir. 2002) ("Whenever a judge considers matters outside the pleadings in a 12(b)(6) motion, that motion is thereby converted into a Rule 56 Summary Judgment motion.").

However, the Eleventh Circuit has held a court may consider extrinsic evidence when ruling on a 12(b)(6) motion without converting it into a Rule 56 motion if the evidence "is (1) central to the plaintiff's claim and (2) undisputed." Day v. Taylor, 400 F.3d 1272, 1276 (11th Cir. 2005) (citing Horsley v. Feldt,

304 F.3d 1125, 1134 (11th Cir. 2002)). Thus, when a plaintiff, in his complaint, incorporates by reference a document that is central to his claim, and the opposing party does not contest the authenticity of the document, a court may consider it when ruling on a motion to dismiss. Id.

In his amended complaint, Plaintiff references nine exhibits, though he attaches only one (Doc. 9-1) (exhibit "B"), which is a May 10, 2020 letter directed to the Office of Veterans Affairs in which Plaintiff pleads for help obtaining medical treatment, along with a certificate of his discharge from active duty. See Am. Compl. at 7-10. Plaintiff includes this exhibit (the letter and discharge certificate) with his responses to Defendants' motions, though it is labeled exhibit "I."

The remainder of the exhibits Plaintiff offers in support of his responses to Defendants' motions to dismiss are the following: prison grievance records; sick-call requests; medical records; an "emergency complaint" Plaintiff sent to the Governor's office on August 1, 2019; an eight-paragraph article printed in "Prison Legal News" in March 2021, regarding Centurion's contract to provide medical services for Mississippi inmates; affidavits from eight inmates; a "complaint" dated April 18, 2021, directed to the Office of the Inspector General of the FDOC and others, in which Plaintiff reports an alleged "mysterious

disappearance of the Neurological Report and Electrical Test and It's [sic] Findings, and the cover-up afoot." <u>See generally</u> Pl. Exs. A-J.

In his amended complaint, Plaintiff incorporates by reference most of the exhibits he offers in opposition to Defendants' motions, and Defendants have not contested the authenticity of the exhibits. However, Plaintiff does not mention in his amended complaint inmate affidavits or a Prison Legal News article, nor are those exhibits central to his claims at this juncture of the proceedings. The inmates aver in their affidavits that Plaintiff's right calf muscle was smaller than the left, and Plaintiff was in severe pain. <u>See generally</u> Pl. Ex. G. Plaintiff alleges as much in his amended complaint, and the Court must accept his allegation as true. Thus, the affidavits are duplicative of Plaintiff's allegations. The Prison Legal News article Plaintiff offers is about Centurion dropping its contract to provide healthcare for prisoners in Mississippi. <u>See generally</u> Pl. Ex. H. This article has no bearing on the issues Plaintiff alleges in his amended complaint.

For the reasons stated, in ruling on Defendants' motions to dismiss, the Court will consider Plaintiff's exhibits to the extent relevant, except exhibits "G" (inmate affidavits) and "H" (article).

## B. Deliberate Indifference

A claim for deliberate indifference to a serious illness or injury is cognizable under § 1983. Estelle v. Gamble, 429 U.S. 97, 104 (1976). To state a claim, a plaintiff first must allege he had "an objectively serious medical need." Brown v. Johnson, 387 F.3d 1344, 1351 (11th Cir. 2004). "To qualify as a serious medical need, an injury or condition, if not treated, must create a substantial risk of serious harm." Hinson v. Bias, 927 F.3d 1103, 1122 (11th Cir. 2019) (quoting in part Taylor v. Hughes, 920 F.3d 729, 733 (11th Cir. 2019)).

Next, the plaintiff must "allege that the prison official, at a minimum, acted with a state of mind that constituted deliberate indifference." Richardson v. Johnson, 598 F.3d 734, 737 (11th Cir. 2010). Finally, the plaintiff must allege facts showing a causal connection between the defendant's conduct and his resulting injuries. Mann v. Taser Int'l, Inc., 588 F.3d 1291, 1306-07 (11th Cir. 2009), overruled in part on other grounds by Hope v. Pelzer, 536 U.S. 730, 739 (2002) (identifying the elements of a deliberate indifference claim: "(1) a serious medical need; (2) the defendants' deliberate indifference to that need; and (3) causation between that indifference and the plaintiff's injury").

"A core principle of Eighth Amendment jurisprudence in the area of medical care is that prison officials with knowledge of the need for care may

not, by failing to provide care . . . or providing grossly inadequate care, cause a prisoner to needlessly suffer the pain resulting from his or her illness." McElligott v. Foley, 182 F.3d 1248, 1257 (11th Cir. 1999). However, "[a] prisoner bringing a deliberate-indifference claim has a steep hill to climb." Keohane v. Fla. Dep't of Corr. Sec'y, 952 F.3d 1257, 1266 (11th Cir. 2020). To sufficiently plead the second element (deliberate indifference), a plaintiff must do more than allege the care he received was "subpar or different from what the inmate want[ed]." Id. at 1277. "[F]ederal courts are generally reluctant to second guess medical judgments and to constitutionalize claims that sound in tort law." Hamm v. DeKalb Cnty., 774 F.2d 1567, 1575 (11th Cir. 1985) (quoting Westlake v. Lucas, 537 F.2d 857, 860 n.5 (1st Cir. 1981)). See also Farrow v. West, 320 F.3d 1235, 1245 (11th Cir. 2003) ("[T]he Supreme Court established that 'deliberate indifference' entails more than mere negligence.").

Stated another way, "[d]eliberate indifference is not about 'inadvertence or error in good faith,' but rather about 'obduracy and wantonness'—a deliberate refusal to provide aid despite knowledge of a substantial risk of serious harm." Stone v. Hendry, 785 F. App'x 763, 769 (11th Cir. 2019) (quoting Whitley v. Albers, 475 U.S. 312, 319 (1986)). When a plaintiff has received some treatment, he pleads a deliberate indifference claim only by alleging facts showing the care he received was "so grossly incompetent, inadequate, or

excessive as to shock the conscience or to be intolerable to fundamental fairness." Harris v. Thigpen, 941 F.2d 1495, 1505 (11th Cir. 1991) (quoting Rogers v. Evans, 792 F.2d 1052, 1058 (11th Cir. 1986)).

## C. Defendants Schouest and Bowden's Motion

Defendants Schouest and Bowden were involved in Plaintiff's efforts to obtain medical care only as grievance responders. Plaintiff filed a grievance appeal to the Office of the Secretary on July 9, 2020, and again on January 18, 2021, complaining that medical providers at the Annex were not providing adequate medical treatment for his calf shrinkage or foot numbness. Am. Compl. at 8, 9; Pl. Ex. A at 7; Pl. Ex. D at 6. Defendants Schouest and Bowden denied both appeals, finding the responses Plaintiff received at the institutional level appropriately addressed his issues. Pl. Ex. A at 8; Pl. Ex. B at 2.

Defendants Schouest and Bowden argue Plaintiff did not exhaust his administrative remedies and fails to state a plausible claim against them. Schouest Motion at 1. Additionally, they invoke qualified immunity. Id. In his response, Plaintiff contends he exhausted his administrative remedies because he filed two grievance appeals to the Office of the Secretary, each of which Defendants Schouest and Bowden denied. Pl. Schouest Resp. at 1. He also argues he states a claim against Defendants Schouest and Bowden because he

alleges they improperly denied his grievances, even though he complained in "great and extensive detai[l]" about his injuries. Id. at 2. Plaintiff maintains, "Defendants did review . . . documents and were clearly aware of the seriousness of Plaintiff's injury, thus prolonging adequate and proper medical treatment." Id.

Prison officials sued in their individual capacity "[are] entitled to qualified immunity for [their] discretionary actions unless [they] violated 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" Black v. Wigington, 811 F.3d 1259, 1266 (11th Cir. 2016) (quoting Case v. Eslinger, 555 F.3d 1317, 1325 (11th Cir. 2009)). Qualified immunity allows prison officials to exercise their official duties without fear of facing personal liability. Alcocer v. Mills, 906 F.3d 944, 951 (11th Cir. 2018). The doctrine protects all but the plainly incompetent or those who knowingly violate an inmate's constitutional rights. Id.

Upon asserting a qualified immunity defense, a defendant bears the initial burden to demonstrate he or she was acting in his or her discretionary authority at the relevant times. Dukes v. Deaton, 852 F.3d 1035, 1041-42 (11th Cir. 2017). Defendants meet their burden. Plaintiff sues Defendants Schouest and Bowden because of their official duties as grievance responders. See Am. Compl. at 8, 9. Thus, the burden shifts to Plaintiff to point to allegations that,

14

accepted as true, show Defendants Schouest and Bowden violated a clearly established constitutional right. Alcocer, 906 F.3d at 951. This, Plaintiff cannot do.

Based on Plaintiff's allegations and his response to Defendants Defendants Schouest and Bowden's motion to dismiss, it is apparent he is proceeding against them solely in their role as grievance responders. See Am. Compl. at 8, 9; Pl. Schouest Resp. at 2-4. To the extent Plaintiff suggests Defendants Schouest and Bowden violated his due process rights by denying his grievances, he fails to state a plausible claim for relief under § 1983. "[A] prisoner does not have a constitutionally-protected liberty interest in [a prison] grievance procedure." Dunn v. Martin, 178 F. App'x 876, 878 (11th Cir. 2006) (citing Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994)). See also Bingham v. Thomas, 654 F.3d 1171, 1177 (11th Cir. 2011).

To the extent Plaintiff suggests Defendants Schouest and Bowden were deliberately indifferent to his serious medical needs simply because they denied his grievance appeals, he fails to state a plausible claim for relief. Plaintiff alleges no facts permitting the inference Defendants Schouest or Bowden had subjective knowledge he faced a substantial risk of serious harm. Plaintiff appears to construe the grievance responses to suggest Defendants Schouest and Bowden themselves reviewed his medical records in responding

to his grievance appeals and, as such, they should have known he had a serious medical need that was going untreated. See Pl. Schouest Resp. at 2. In denying his appeals, however, Defendants Schouest and Bowden did not represent to Plaintiff that they had reviewed his medical records. Rather, they said their responses were based on "[r]ecords available to [the] office." Pl. Ex. A at 8; Pl. Ex. B at 2 (emphasis added). Regardless, it is clear Defendants Schouest and Bowden were not medical providers; they were representatives of the Office of the Secretary at the relevant times. Id.

Assuming arguendo that Defendants Schouest and Bowden had access to and did in fact review Plaintiff's medical records but failed to appreciate that Plaintiff had a serious medical need or was not receiving constitutionally adequate medical care, such a failure does not equate to deliberate indifference. See Farmer v. Brennan, 511 U.S. 825, 826 (1994) ("[T]he failure to alleviate a significant risk that an official should have perceived but did not, while no cause for commendation, cannot be condemned as the infliction of punishment.").

Because Plaintiff fails to state a plausible claim against Defendants Schouest and Bowden, they are entitled to qualified immunity, and their

motion is due to be granted to that extent. As such, their exhaustion defense is moot.[4]

### D. Dr. Perez-Lugo's Motion

Dr. Perez-Lugo argues Plaintiff cannot proceed against him in his official capacity because he is a Centurion employee and because Plaintiff does not allege facts to invoke supervisor liability; Plaintiff fails to state a plausible First Amendment claim; Plaintiff's Fourteenth Amendment claim is subsumed by his Eighth Amendment claim; Plaintiff fails to state a plausible Eighth Amendment claim; and Plaintiff's requests for injunctive relief should be dismissed because he fails to state an official-capacity claim and because Plaintiff is no longer housed at the Annex. Dr. Motion at 3-4. In his response, Plaintiff voluntarily dismisses his Fourteenth Amendment claim, but he contends his official-capacity claim and First and Eighth Amendment claims are viable and sufficiently pled. Pl. Dr. Resp. at 1-2.

---

[4] Even if Plaintiff had stated a plausible claim against Defendants Schouest and Bowden based on their responses to his grievance appeals, Plaintiff's grievances were about his requests for medical care, not about allegedly inadequate grievance responses. See Pl. Ex. A at 7; Pl. Ex. D at 6. In other words, Plaintiff did not file grievances complaining about any conduct by Defendants Schouest or Bowden. Thus, had Plaintiff stated a plausible claim against these Defendants, it would have been un-exhausted.

### i.     Eighth Amendment Claim

Plaintiff's primary claim against Dr. Perez-Lugo (in both his individual and official capacities) arises under the Eighth Amendment: deliberate indifference to a serious medical need. Dr. Perez-Lugo accepts for purposes of his motion to dismiss that Plaintiff alleges a serious medical need. Dr. Motion at 18 n.3. The Court does the same. As to the individual-capacity claim, Plaintiff alleges Dr. Perez-Lugo ignored his grievances and sick-call requests for seven months and failed to completely document in Plaintiff's medical chart the reason Dr. Perez-Lugo referred him to a neurologist on January 19, 2021. See Am. Compl. at 7-10. The Court will handle these issues in reverse order.

First, it is uncontested that the only time Plaintiff was treated by Dr. Perez-Lugo was on January 19, 2021, and, on that date, Dr. Perez-Lugo evaluated Plaintiff and referred him to a neurologist. Id. at 9. Plaintiff contends Dr. Perez-Lugo measured both of his calves, which showed the right was smaller than the left, but Dr. Perez-Lugo did not "mention[] . . . [the] measurement numbers" when recording his diagnosis. Id. at 10. See also Pl. Dr. Resp. at 3. Accepting as true that Dr. Perez-Lugo did not record Plaintiff's calf measurements, such conduct cannot be construed as deliberate indifference. Dr. Perez-Lugo evaluated Plaintiff and referred him for evaluation by a specialist, and Plaintiff does not assert Dr. Perez-Lugo's failure

to document his calf measurements resulted in any harm or delayed his appointment with the neurologist. Even if he had alleged as much, however, Plaintiff's mere disagreement with Dr. Perez-Lugo's notetaking practices is insufficient to state a claim under the Eighth Amendment.

Moreover, Plaintiff does not allege Dr. Perez-Lugo refused to provide or schedule the treatment the specialist recommended. See Am. Compl. at 10; Pl. Dr. Resp. at 3-4. In fact, on March 9, 2021, Nurse A. Parrish responded to an informal grievance Plaintiff submitted (requesting medical boots and a double mattress pass), and the nurse informed him:

> Record review indicates you had NCV/EMG on 2/11/2021 at RMC. A request for these results has been submitted. Upon receipt of your diagnostic studies, an appointment will be made. This process usually takes several weeks. Should you have any further issues regarding your health or treatment plan, please access sick call.

Pl. Ex. F at 5. Plaintiff was transferred to South Bay on March 17, 2021, Pl. Ex. J at 13, meaning Dr. Perez-Lugo was no longer responsible for Plaintiff's medical care. Thus, any possible or alleged delay in scheduling an MRI or surgery is not attributable to Dr. Perez-Lugo.

Second, Plaintiff faults Dr. Perez-Lugo for unnecessarily delaying Plaintiff's ability to obtain adequate medical care, including referral to a neurologist for an MRI and other intervention. See Am. Compl. at 7-9. Plaintiff

alleges he had been complaining for seven months before Dr. Perez-Lugo finally saw him. Id. See also Pl. Dr. Resp. at 3. According to the records Plaintiff provides, he had been submitting grievances (at the Annex) since as early as March 9, 2020. See Pl. Ex. C at 8. In total, between March 2020 and December 2020, Plaintiff initiated the grievance process at the Annex at least three times seeking treatment for his leg and foot, and he submitted at least two sick-call requests. See Pl. Ex. A at 4-8; Pl. Ex. C at 8-9; Pl. Ex. D at 2-4; Pl. Ex. J at 8.

Dr. Perez-Lugo responded to three of Plaintiff's grievances: on April 20, 2020; on June 29, 2020; and on December 18, 2020. Pl. Ex. A at 6; Pl. Ex. C at 12; Pl. Ex. D at 5. Accepting that Plaintiff's grievances—to which Dr. Perez-Lugo responded—put Dr. Perez-Lugo on notice that Plaintiff had a serious medical need, Plaintiff's allegations and the grievance responses he relies upon do not permit the reasonable inference that Dr. Perez-Lugo was deliberately indifferent to Plaintiff's serious medical need. Dr. Perez-Lugo did not ignore Plaintiff's complaints or decline to ensure Plaintiff was receiving treatment. On the contrary, in each of his responses, Dr. Perez-Lugo noted there was "no indication [Plaintiff had] been denied medical care or access to medical." Pl. Ex. A at 6; Pl. Ex. C at 12; Pl. Ex. D at 5.

In the April 27, 2020 response, Dr. Perez-Lugo noted Plaintiff had "an upcoming appointment scheduled with the provider for [the] issue[s] [raised in

his grievance]," which were his "right bottom foot [pain] . . . [and] right ankle and right Achilles heel" pain. Pl. Ex. C at 11, 12. And, in fact, records show Plaintiff treated with a provider on April 27, 2020. Pl. Ex. A at 4, 6.

In the June 29, 2020 response, Dr. Perez-Lugo referenced Plaintiff's April 27, 2020 appointment and noted the "provider reviewed [Plaintiff's] x-ray results and discussed with [him] based on the x[-]ray results at that time [there was] no clinical indication for [an] MRI." Id. at 6. Dr. Perez-Lugo also noted, as did a nurse who responded to his informal grievance, that Plaintiff had not accessed sick call since that appointment. Id. at 4, 6. Even if the provider's decision not to order an MRI was medically incorrect or debatable, Dr. Perez-Lugo was not the provider who made the decision. On these facts, Dr. Perez-Lugo's deference to a providers' medical judgment does not suggest deliberate indifference, even if that medical judgment was incorrect or subject to reasonable debate among medical practitioners. See Wilson v. Smith, 567 F. App'x 676, 678 (11th Cir. 2014) (affirming dismissal of a deliberate indifference claim against a doctor who, upon a mere review of the plaintiff's medical record, determined the plaintiff "was receiving appropriate treatment" by prison medical providers). Moreover, a difference of opinion regarding questions of medical judgment does not give rise to a claim under the Eighth Amendment. See Hamm, 774 F.2d at 1575.

Finally, in the December 18, 2020 response, Dr. Perez-Lugo noted Plaintiff's records did not indicate he was being denied medical care. Pl. Ex. D at 5. Dr. Perez-Lugo observed Plaintiff had been "seen in sick call on November 18, 2020," and Plaintiff had not sought medical care "for any complaints" after that appointment. Id. Plaintiff disputes having been seen in sick call on November 18, 2020, at least for his leg/foot issues. Am. Compl. at 8; Pl. Ex. D at 4, 6. He accuses Nurse Roberson or the medical department of lying about him having been seen that day for these issues. Am. Compl. at 8; Pl. Ex. D at 6.

Plaintiff's own allegations belie his assertion that Nurse Roberson lied. For instance, in his amended complaint, Plaintiff alleges, on the one hand, that Nurse Roberson told him (Plaintiff) he or she (the nurse) would not order an MRI but would "put Plaintiff in to be seen by a Doctor," but, on the other hand, Plaintiff contends that he treated with Nurse Roberson only about wax build-up in his ears, not about his calf shrinkage or foot numbness. Am. Compl. at 8, 10; see also Pl. Ex. D at 6. These assertions are contradictory. If Plaintiff saw Nurse Roberson only about his ears, as he alleges, Nurse Roberson would have had no reason to discuss with Plaintiff the necessity (or lack thereof) of ordering an MRI. In other words, whether an MRI was clinically indicated

likely would not have been a conversation if Plaintiff's only medical complaint addressed at the sick-call appointment was wax build-up.

That Nurse Roberson (or another provider), prior to January 19, 2021, evaluated Plaintiff's leg and foot is supported not only (even if implicitly) by Plaintiff's own allegations but also by the records he provides. For instance, both a nurse (M. Tomlinson) and Dr. Perez-Lugo noted in grievance responses that a provider reviewed Plaintiff's x-ray results with him and decided an MRI was not warranted. Pl. Ex. A at 4, 6. Additionally, in Plaintiff's "Chronological Record of Health Care," which he offers in opposition to Defendants' motions, Nurse Tomlinson noted on December 16, 2020, that Plaintiff had submitted a formal grievance and that he was "last seen 11-18-2020." Pl. Ex. E at 6. While the entry does not say Plaintiff was seen on November 18, 2020, regarding leg or foot complaints, the entry was made by Nurse Tomlinson, not Nurse Roberson.

Despite the contradictions in Plaintiff's own allegations, accepting as true that Nurse Roberson lied or mistakenly misinterpreted a note written by another nurse about the fact that Plaintiff was treated on November 18, 2020, for his calf shrinkage or foot numbness, Plaintiff does not allege that Dr. Perez-Lugo knew Plaintiff had not been seen about those issues on that date. Plaintiff's own medical record indicate he had been seen in sick call on

23

November 18, 2020. Pl. Ex. E at 6. And, as discussed previously, when Plaintiff personally treated with Dr. Perez-Lugo on January 19, 2021, Dr. Perez-Lugo evaluated him and, based on that evaluation, referred him to a specialist. Plaintiff alleges no facts permitting the inference that Dr. Perez-Lugo provided care that was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." See Harris, 941 F.2d at 1505.

As to Plaintiff's official-capacity claim against Dr. Perez-Lugo, assuming Plaintiff could proceed against Dr. Perez-Lugo in such a capacity, Plaintiff fails to state a plausible claim for relief. "A claim asserted against an individual in his or her official capacity is, in reality, a suit against the entity that employs the individual." Mann, 588 F.3d at 1309 (citing Brown v. Neumann, 188 F.3d 1289, 1290 (11th Cir.1999)). When there is no basis to support a federal claim against a prison official in his individual capacity, there is no basis to support an official-capacity claim against that person. Id. Moreover, Plaintiff does not allege Centurion's official policy or unofficial custom or practice was the "moving force" behind an alleged constitutional violation. Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978).[5]

---

[5] To the extent Plaintiff purports to proceed against Defendants Schouest and Bowden in their official capacities, he fails to state a plausible claim against them in

### ii.    First Amendment Claim

Plaintiff alleges Dr. Perez-Lugo "retaliated against [him] for filing grievances, thus prolonging adequate treatment." Am. Compl. at 5. To state an actionable claim for retaliation, a plaintiff must allege:

> (1) his speech was constitutionally protected; (2) [he] suffered adverse action such that the [official's] allegedly retaliatory conduct would likely deter a person of ordinary firmness from engaging in such speech; and (3) there is a causal relationship between the retaliatory action . . . and the protected speech [the grievance].

O'Bryant v. Finch, 637 F.3d 1207, 1212 (11th Cir. 2011) (second and fourth alterations in original).

In his response to Dr. Perez-Lugo's motion, Plaintiff contends "Dr. Perez-Lugo . . . stated within two of his Formal Grievance responses, that nothing wasn't going to be done [sic] concerning Plaintiff's serious injury because of grievance filings." Pl. Dr. Resp. at 2. Plaintiff does not make such allegations in his amended complaint. On the contrary, Plaintiff alleges Dr. Perez-Lugo responded to him three times, each time informing him he had not been denied medical treatment. Am. Compl. at 7, 8, 9. Plaintiff provides copies of these grievance responses, dated April 27, 2020, June 29, 2020, and December 18,

---

that capacity for the same reason he fails to assert an official-capacity claim against Dr. Perez-Lugo.

2020, and in none of them does Dr. Perez-Lugo tell Plaintiff nothing would be done for him because he had filed grievances. Pl. Ex. A at 6; Pl. Ex. C at 12; Pl. Ex. D at 5. Plaintiff's conclusory, unsupported allegations that Dr. Perez-Lugo retaliated against him amount to no "more than an unadorned, the-defendant-unlawfully-harmed-me accusation," which does not satisfy the federal pleading standard. Iqbal, 556 U.S. at 678. See also Tani v. Shelby Cnty., Ala., 511 F. App'x 854, 857 (11th Cir. 2013) (affirming dismissal of a complaint that alleged, as labels and conclusions, violations of various constitutional rights with no supporting facts to "explain what actions caused which violations").

Accordingly, it is now

**ORDERED:**

1.     Defendants Schouest and Bowden's motion to dismiss (Doc. 16) is **GRANTED** to the extent stated.

2.     Defendant Dr. Perez-Lugo's motion to dismiss (Doc. 39) is **GRANTED.**

3.     All claims against Defendants Schouest, Bowden, and Perez-Lugo are **dismissed with prejudice**.[6]

---

[6] Generally, a pro se plaintiff should be provided an opportunity to amend his complaint "[w]here it appears a more carefully drafted complaint might state a claim upon which relief can be granted." Bank v. Pitt, 928 F.2d 1108, 1112 (11th Cir. 1991), overruled in part by Wagner v. Daewoo Heavy Indus. Am. Corp., 314 F.3d 541, 542 (11th Cir. 2002) (en banc). However, if an amendment would be futile, such as where a plaintiff can "prove no set of facts" that would entitle him to relief, id., the Court

4.     Plaintiff's request for the Court to take judicial notice of the record (Doc. 41) is **DENIED as moot**.

5.     Attorneys Edwards and Dzwonkowski's motion to withdraw as counsel for Defendant Dr. Perez-Lugo (Doc. 43) is **GRANTED**. Attorney Ronald Chapman filed a notice of appearance on Defendant Dr. Perez-Lugo's behalf (Doc. 42). The **Clerk** is directed to update the docket accordingly.

6.     The **Clerk** is directed to enter judgment, terminate any pending motions, and close the file.

**DONE AND ORDERED** at Jacksonville, Florida, this 22nd day of March 2022.

_____

BRIAN J. DAVIS
United States District Judge

Jax-6
c:
Derrick C. James
Counsel of Record

---

may dismiss the case with prejudice, Cockrell v. Sparks, 510 F.3d 1307, 1310 (11th Cir. 2007) ("Leave to amend a complaint is futile when the complaint as amended would still be properly dismissed or be immediately subject to summary judgment for the defendant."). Plaintiff has previously been given an opportunity to amend his claims. See Order (Doc. 8). Additionally, any effort by Plaintiff to further amend his claims premised on these facts would be futile.